[This opinion has been published in *Ohio Official Reports* at 78 Ohio St.3d 497.]

CLEVELAND BAR ASSOCIATION V. ARMON.

[Cite as *Cleveland Bar Assn. v. Armon*, 1997-Ohio-59.]

*Attorneys at law—Misconduct—Permanent disbarment—Appropriation of client*
*funds and a pattern of neglect of client interests—Failing to cooperate in*
*disciplinary investigation.*

(No. 96-2785—Submitted February 19, 1997—Decided June 4, 1997.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and
Discipline of the Supreme Court, No. 96-26.

_____

{¶ 1} On April 15, 1996, relator, Cleveland Bar Association, filed a complaint charging that on ten separate occasions respondent, Joseph J. Armon of Cleveland, Ohio, Attorney Registration No. 0032181, neglected client matters entrusted to him in violation of DR 6-101(A)(3). Relator charged that on two of these occasions respondent engaged in conduct that adversely reflected on his fitness to practice law in violation of DR 1-102(A)(6). The relator also alleged that with respect to all matters charged respondent violated Gov.Bar R. V(4)(G) by failing to cooperate in the investigations. Respondent did not answer or respond to the complaint, and on October 3, 1996 relator filed a motion for default judgment.

{¶ 2} A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") found that respondent, given adequate notice of the complaint, failed to answer or otherwise plead. Based on the complaint, the motion for default judgment, and attached affidavits, the panel found with respect to Count One that sometime after July 1986, Shelia Smith retained respondent to file a personal injury action. Respondent did not respond to Smith's inquiries about the status of the case in 1993 and did not turn the file over to a new attorney after Smith

discharged him in March 1994. The new attorney discovered that respondent had not pursued the case.

{¶ 3} With respect to Count Two, the panel found that Patricia Ricca retained respondent to file a personal injury claim relating to an accident that occurred on April 9, 1987. On August 8, 1989, it appears Ricca irrevocably assigned to Comprehensive Health Services, Inc. ("comprehensive") a portion of any settlement or judgment up to the amount of her medical expenses paid by Comprehensive in exchange for Comprehensive's agreement not to sue her for such expenses. The assignment was delivered to respondent.

{¶ 4} Respondent failed to respond to Comprehensive's inquiries about the assignment in September 1989, May 1990, and November 1993. In May 1994, Comprehensive again requested information about the assignment, indicating that if no response was made, it would begin collection proceedings against Ricca. Respondent failed to return phone calls from Comprehensive, reply to its letters, or comply with Ricca's request that he respond. Respondent also failed to respond to inquiries by relator's investigator.

{¶ 5} The panel found that, as alleged in Count Three, Antonia Grabowski paid respondent $750 to defend her and her daughter, Julie Ann Delbaso, in municipal court in Akron. Respondent filed an appearance, but failed to further represent Grabowski and Delbaso. As a result, a default judgment was taken against them. Grabowski, her new attorney, and counsel for relator were all unable to contact respondent about his actions or obtain a return of Grabowski's documents.

{¶ 6} The panel found with respect to Count Four that Kathleen Kraemer retained respondent in June 1992 to handle her son's personal injury case. Respondent failed to return Kraemer's phone calls and failed to turn over the file to Kraemer's new counsel as requested in several letters. Respondent also failed to respond to investigative inquiries from relator.

2

**{¶ 7}** As alleged in Count Five, the panel found that Stanley Terry retained respondent in November 1984 to pursue a personal-injury claim. Respondent received settlement proceeds on September 3, 1987 and March 11, 1988 and failed to notify respondent or turn the funds over to him. Respondent refused to meet with Terry or return his calls about the status of his claim. Respondent also failed to respond to calls or cooperate with relator in its investigation of the matter.

**{¶ 8}** The panel found that Randa Mina retained respondent in June 1991 to represent her concerning injuries she sustained in an automobile accident. Respondent did not respond to Mina's requests about the status of her case, failed to respond to the collection agencies that were contacting Mina, and failed to respond to a doctor's request for confirmation that he was representing Mina. In fact, respondent did not file the case until May 1993. In June 1994, respondent told Mina that her case would be settled within a couple of months. Mina's new counsel, whom she hired after discharging respondent in November 1994, found that as a result of respondent's failure to appear at a hearing Mina's case had been dismissed on March 31, 1994. Respondent did not respond to attempts by the relator to investigate the matter.

**{¶ 9}** As alleged in Count Seven, the panel found that after respondent received $500 from Steven J. Keppler to transfer the residential custody of his son, Keppler did not hear from respondent. Respondent told Keppler's former wife that delay was caused because papers had been lost in the courthouse, when, in fact, respondent never filed the necessary papers and Keppler's case was dismissed. Respondent failed to respond to inquiries by the bar association about the matter.

**{¶ 10}** With respect to Count Eight, the panel found that E. Anthony Mirosavich retained respondent in July 1991 to handle the estate of his father in probate court. Respondent failed to file federal and state tax returns for the estate, failed to distribute all the assets, and otherwise delayed in handling the case. Mirosavich discharged respondent on June 3, 1994 and retained a new attorney, but

the new attorney was unable to obtain the estate file from respondent. Mirosavich died on June 11, 1994, and his brother retained the new attorney to continue to handle the estate. Even after repeated attempts, the new attorney was successful in obtaining only part of the file from respondent. Respondent failed to respond to the inquiries of the relator with respect to the matter. The panel found with respect to Count Nine that respondent's actions relating to the father's estate delayed the handling of Mirosavich's estate.

{¶ 11} The panel finally found in Count Ten that in October 1992, Doleta Casteel retained respondent to handle a medical malpractice lawsuit. Although he filed the case, respondent's failure to obtain an expert witness within the time allowed by the court resulted in a dismissal of the proceeding. Respondent failed to notify Casteel of the dismissal. Casteel obtained the services of a new attorney, but neither Casteel, the new attorney, nor relator was able to obtain a response from respondent or reclaim Casteel's file from him.

{¶ 12} The panel concluded that respondent's actions and failures to act violated the Disciplinary Rules as charged and recommended that respondent be indefinitely suspended from the practice of law. The board adopted the findings, conclusions, and recommendation of the panel.

_____

*Harold H. Reader* and *Virginia S. Brown*, for relator.

_____

**Per Curiam.**

{¶ 13} This case involves a lawyer who failed in his duty to his clients by appropriating his clients' funds, neglecting their interests, and engaging in a pattern of deceiving them. The number of these incidents indicates that respondent cannot or will not conform to our required ethical standards. Moreover, respondent has failed in the duty he owes to his profession to cooperate in disciplinary investigations.

{¶ 14} We accept the findings and conclusions of the board. We believe, however, that conduct such as respondent's warrants a more severe sanction than an indefinite suspension. Respondent's pattern of client neglect and total disregard of our investigatory process renders him unfit to be continued on the roll of those who are allowed to engage in the practice of law in Ohio. We have held in many cases that appropriation of client funds and a pattern of neglect of client interests warrants disbarment. *Cuyahoga Cty. Bar Assn. v. Churilla* (1997), _____Ohio St.3d _____, _____N.E.2d ____ ; *Columbus Bar Assn. v. Sterner* (1996), 77 Ohio St.3d 164, 167, 672 N.E.2d 633, 635, and cases cited therein. Respondent is hereby permanently disbarred from the practice of law in Ohio. Costs taxed to respondent.

*Judgment accordingly*.

MOYER, C.J., RESNICK, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS and F.E. SWEENEY, JJ., dissent and would indefinitely suspend respondent.

_____