CINCINNATI BAR ASSOCIATION *v.* KOMAREK.

[Cited as *Cincinnati Bar Assn. v. Komarek* (1998), 84 Ohio St.3d 90.]

(No. 98–398—Submitted July 8, 1998—Decided November 25, 1998.)

94

*Robert F. Laufman, Stephen M. Nechemias* and *Edwin W. Patterson III*, for relator.

*Paul A. Komarek, pro se.*

---

***Per Curiam.*** At the outset we note that respondent was suspended from the practice of law on September 14, 1995, for failure to comply with a subpoena and for failure to cooperate in an investigation. That suspension has not been lifted, although relator reported to the Clerk of the Supreme Court that respondent had complied with the subpoena and had met the conditions for reinstatement specified in the order of suspension.

Respondent was also suspended on June 7, 1996, as a result of the answer he filed in this disciplinary case in August 1995 putting his mental illness in issue. It is respondent's disciplinary violations and his suspension for mental illness that are before us now.

We adopt the findings, conclusions, and recommendation of the board that respondent's suspension for mental illness under Gov.Bar R. V(7)(D) should be terminated, and it is so ordered.

In response to our order to show cause why this court should not adopt the board's resolution of his alleged disciplinary violations, respondent filed a motion to supplement the record, a motion to remand the matter to the board to consider the supplemented record, and a motion for sanctions against relator for failure to respond to requests for admissions. Respondent also objected to the board's denial of his motion to dismiss the disciplinary action, claiming that the sanction he received for mental illness was a final disposition of his case and *res judicata* as to the disciplinary matters. Respondent also claims that to deny him the right to practice on account of his mental illness violates the Americans with Disabilities Act, Section 12101 *et seq.*, Title 42, U.S.Code ("ADA").

Having reviewed the record, we grant respondent's motion to supplement. We deny respondent's motion for remand to the board to consider the record, as supplemented, since this court is as able as the board to consider the supplemented record. Further, we find that "there was good reason for the failure to admit"

under Civ.R. 37(C), and respondent's motion for sanctions based on relator's alleged failure to respond adequately is denied.

Further, we reject respondent's objection, based upon *res judicata,* to the board's denial of his motion to dismiss. The purpose of Gov.Bar R. V(7) is to provide expedited protection to the public from a lawyer who admits he can no longer render legal services properly. The indefinite summary suspension authorized by that rule when mental illness is placed in issue by the respondent's answer does not determine the underlying issues of the disciplinary complaint. The issue in the collateral proceeding, raised by the answer claiming mental illness, is whether and when the lawyer who claimed mental disability may resume the practice, not the nature and extent of the disciplinary violations. A resolution of the mental illness issue is not *res judicata* as to the disciplinary issues. As we said in *Cincinnati Bar Assn. v. Fettner* (1983), 8 Ohio St.3d 17, 18, 8 OBR 85, 86, 455 N.E.2d 1288, 1288–1289, "while the board may properly consider respondent's mental illness at the time of the alleged misconduct as a mitigating factor in determining what sanction should be imposed, the mental illness provisions * * * are not intended to be used by respondent in a disciplinary action to avoid suspension on that basis."

Respondent's claim that the ADA precludes our disciplinary action also fails. The ADA does not prevent disciplinary authorities from disbarring an attorney with a bipolar disorder who had misappropriated client funds. See *Florida Bar v. Clement* (Fla.1995), 662 So.2d 690, 699–700, certiorari denied (1996), 517 U.S. ——, 116 S.Ct. 1829, 134 L.Ed.2d 933. See, also, *State ex rel. Oklahoma Bar Assn. v. Busch* (Okla.1996), 919 P.2d 1114, 1119–1120, in which the court imposed a two-year suspension on an attorney with attention deficit disorder.

As to the disciplinary violations, we adopt the findings and conclusions of the board. Because of respondent's actions and failures to act, lawsuits brought by his clients were dismissed, default judgments were taken against them, their homes were foreclosed upon, they were lied to about the status of their cases, and their money was taken by respondent and not returned.

Further, the record is clear that respondent did no work for the $400 in attorney fees he received from Taylor, and that he received $2,333.70 from the Hedges and an unknown amount of rents from Joseph's tenants, all of which amounts he failed to transmit or account for. In addition, Hill obtained a $155,000 malpractice judgment against respondent, which apparently remains unpaid. The other damages caused by respondent's conduct cannot be quantified.

The usual sanction for misappropriation of client funds and neglect of client matters is disbarment. *Columbus Bar Assn. v. Sterner* (1996), 77 Ohio St.3d 164, 167, 672 N.E.2d 633, 635. However, as we noted in *Warren Cty. Bar Assn. v.*

*Bunce* (1998), 81 Ohio St.3d 112, 115, 689 N.E.2d 566, 568, when imposing a sanction, we consider not only the duty violated, but also the lawyer's mental state, the injury caused, and whether mitigating factors exist. Considering the mental state of respondent at the time of these infractions and respondent's recovery from his psychological disorder, we find that an indefinite suspension from the practice of law is appropriate in this case with credit for time served under suspension for mental disability. As a condition for applying for reinstatement, respondent shall produce affidavits (1) from the commissioner of the estates of Oliver and Carter that all fees respondent received while representing the guardians of those estates have been repaid to the estates, (2) from the Youngers, Love, Wimalaratna, and Taylor that he had repaid the fees he received from them or their families, (3) from Hill that the $155,000 malpractice judgment has been paid, (4) from Joseph that the rentals which respondent received and did not use for mortgage payments have been refunded, and (5) from the Hedges that the $2,333.70 which he failed to forward has been refunded to them. And it is so ordered. Costs are taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.