[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 84.]

CLEVELAND BAR ASSOCIATION *v.* CHANDLER.

[Cite as *Cleveland Bar Assn. v. Chandler*, 1995-Ohio-126.]

*Attorneys at law—Misconduct—Two-year suspension with a full year of that suspension to be served and thereafter one year of monitored probation— Reinstatement conditioned on full restitution, with interest, to clients— Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Inadequate preparation—Neglect of an entrusted legal matter—Failure to carry out contract for professional services.*

(No. 94-2653—Submitted January 24,1995—Decided April 26, 1995.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 94-03.

───────────────

{¶ 1} In an amended complaint filed on July 8, 1994, relator, Cleveland Bar Association, charged respondent, Everett Alfred Chandler of Cleveland, Ohio, Attorney Registration No. 0030888, with three counts of misconduct, including violations of DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation), 6-101(A)(2) and (3) (inadequate preparation and neglect of an entrusted legal matter), and 7-101(A)(2) (failure to carry out contract for professional services). Respondent answered, denying all the alleged misconduct, on October 3, 1994, two months late and only four days before the matter was scheduled for hearing before a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court. Respondent also filed a motion for a continuance with his answer, but he appeared on the October 7 hearing date and indicated to the panel that he was prepared to proceed.

{¶ 2} Evidence submitted to prove the allegations in Count I established that Earl and Joyce Smedley retained respondent in December 1989 to avert a

threatened foreclosure of their home. The Smedleys paid at least $450 in installments for respondent to defend them in the foreclosure action and to file a petition for relief in bankruptcy court. Thereafter, the Smedleys received periodic notices regarding the increasingly imminent foreclosure. They frequently contacted respondent about these notices, but he advised them not to worry. Around August 1990, the Smedleys learned that respondent had not filed their bankruptcy petition and that their home had been sold at a sheriff's sale. Respondent subsequently filed a bankruptcy petition on which he represented the signing date as September 6, 1990, even though the Smedleys had signed the petition in December 1989.

{¶ 3} With respect to Count II, the evidence established that Richard A. Grant, a builder and home remodeler, paid respondent $1,000 in November 1987 to defend him in an action brought by a subcontractor. The subcontractor had done some carpentry for Grant, but Grant could not pay the subcontractor because the general contractor of the project had not paid him. Grant knew of no discovery or other preparation by respondent before the case went to trial, and respondent presented no witnesses. Grant lost the case, and judgment was entered against him in the amount of $9,587.50, with interest.

{¶ 4} In April 1988, respondent brought suit on Grant's behalf against the homeowners for whom Grant had subcontracted the carpentry work. The homeowners counterclaimed, but respondent failed to answer. Respondent also failed to attend a hearing scheduled for October 19, 1988, which took place hours before he filed a motion for continuance of the hearing date. On November 10, 1988, a default judgment was entered against Grant, and the court stated that it would set a hearing date to determine the amount of damages to which the homeowners were entitled.

{¶ 5} Three years later, Grant's claim against the homeowners was still pending in court, and the matter was scheduled again for hearing. Respondent

missed the hearing and again did not file his motion for continuance until after the hearing was over. Grant finally retained another attorney, who sued respondent for professional negligence and obtained a judgment against him for $17,900.

{¶ 6} Evidence submitted to prove Count III of the complaint established that  Darrell Eugene Sharp, Sr., engaged respondent in or around May 1991 to represent him in a domestic relations case. Sharp paid respondent a $350 retainer fee. However, respondent did not keep Sharp apprised of court dates, and he told Sharp to bring witnesses to a hearing, but did not advise the referee in advance so that the witnesses could testify.

{¶ 7} Respondent showed no remorse for his conduct. He justified his failure to file the Smedleys' bankruptcy petition on the ground that Mr. Smedley owed him legal fees from prior cases. This, according to respondent, placed the Smedleys in a "hostage situation" and put him "in a position to demand monies for servicesNOT paid for over the years." (Capitalization sic.) Respondent also admitted misrepresenting the date on which the Smedleys signed their bankruptcy petition; he explained that "the bankruptcy court wanted a date within one week from signing to filing the petitions." In fact, respondent accounted for all the complaints against him in the same way—they were the product of "persons [who were] unhappy when they [did] not GET THEIR WAY." (Capitalization *sic.*)

{¶ 8} From this evidence, the panel found that respondent had violated the cited Disciplinary Rules. Respondent submitted no evidence of good character, and he reproached his former clients and the disciplinary process for suggesting misconduct on his part. The panel thus found nothing to mitigate the violations, and it noted that respondent had been publicly reprimanded for previous misconduct in *Cuyahoga Cty. Bar Assn. v. Chandler* (Feb. 26, 1986), Supreme Court Case No. 85-48, unreported.[1]

---

1. The previous order provided for respondent's indefinite suspension from the practice of law upon a subsequent finding of misconduct. Discipline enhancement is now governed by Gov.Bar R.

**{¶ 9}** The majority of the panel recommended that respondent be suspended from the practice of law for a period of two years, with eighteen months suspended, during which time respondent should be under a monitored probation, and that respondent also be ordered to make restitution to the Smedleys in the amount of $450. The panel chairperson recommended a one-year suspension. The board adopted the panel's findings of misconduct and the recommendation of the panel majority.

———————————

*Calfee, Halter & Griswold* and *Robert N. Rapp*; *Willacy & LoPresti* and *Keith A. Ganther*, for relator.

*Everett Alfred Chandler, pro se.*

———————————

*Per Curiam.*

**{¶ 10}** We have reviewed the record in this case and concur in the board's findings that respondent violated DR 1-102(A)(4), 6-101(A) (2) and (3), and 7-101(A)(2). However, the board's recommendation that respondent be suspended for a period of two years from the practice of law, with eighteen months stayed, is inappropriate for misconduct of this severity. We, therefore, impose the recommended two-year suspension from the practice of law in Ohio, but we order that respondent serve a full year of that suspension period and thereafter be on one year of monitored probation. Respondent shall also make full restitution to the Smedleys, with interest at the judgment rate, before his reinstatement. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY and COOK, JJ., concur.

———————————

V(6)(C), which provides that prior disciplinary offenses justify an increase in the degree of discipline to be imposed for subsequent misconduct.

PFEIFER, J., dissents and would suspend respondent for eighteen months, but stay the suspension.

———————————